**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ALEXIS ASHLOCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:12-CV-146-SNLJ** |
| | ) | |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

This matter arises out of an insurance coverage dispute. Plaintiff Alexis Ashlock seeks to recover underinsured motorist coverage from her parents' insurance carrier, defendant State Farm Mutual Automobile Insurance Company. The parties have filed cross motions for summary judgment, and both motions are now fully briefed and ripe for disposition.

## I. Background

The underlying facts are not disputed.[1] On April 28, 2012, plaintiff Alexis Ashlock was 23 years old and resided with her parents, Nina and Dennis Ashlock, in the state of Arkansas. She was riding as a passenger in a 1999 Oldsmobile Alero owned by Tom Graham and permissively driven by Brian Simkins. Mr. Simkins lost control of the vehicle, which resulted in the vehicle overturning multiple times and striking a fence. Plaintiff was ejected from the

[1] In fact, the parties filed a Joint Stipulation of Uncontested Facts (#14), which sets out 33 statements of uncontested facts and, at paragraphs 34 and 35, the positions of each party with respect to the coverage dispute at issue. The Court commends the parties on their cooperation with respect to those matters.

vehicle during the accident and was critically injured; she was transported by Air-Evac to a hospital in Memphis, where she was admitted in hemorrhagic shock and suffering from the following injuries as a result of the vehicle accident: a fractured right scapula, seven fractured ribs, lacerated liver, a punctured right lung, lacerations to her right leg and left thigh, an open fifth metatarsal shaft fracture, a right L2 transverse process fracture, and possible widening of the CI-C2 vertebrae. She underwent surgery in the hospital and was discharged on May 8. Plaintiff then developed a deep vein thrombosis in her left leg, which was caused by the earlier injuries and their treatment. Plaintiff was admitted to a hospital in Pocahontas, Arkansas from May 18 through May 27,2012 for treatment of the deep vein thrombosis. Plaintiff remains on Coumadin, a blood thinning medication, to this day. Plaintiff's medical bills total nearly $300,000.

Mr. Simkins pleaded guilty in the Circuit Court of Ripley County to the Class C Felony of Operating a Vehicle while Intoxicated Resulting in an Injury stemming from the April 28, 2012 accident. The parties agree he is legally liable for the damages plaintiff sustained as a result of the accident. Although the exact amount of the damages sustained by Alexis Ashlock as a result of the accident of April 28, 2012, has not been specifically been determined, it is agreed between the parties that said damages exceed $125,000.00.

At the time of the accident, Shelter Insurance Company ("Shelter") had issued a liability policy insuring the 1999 Oldsmobile Alero with limits of $25,000.00 per person/per accident. That insurance policy (the "Shelter Policy") is the only known liability coverage available to Mr. Simkins for the accident. Shelter has agreed to pay its liability limits of $25,000 to plaintiff for the damages she sustained.

Plaintiff and her parents also had their own automotive insurance policies. Defendant State Farm had in effect three separate automobile policies issued to Nina Ashlock and Dennis Ashlock as the named insureds for three different automobiles. Defendant State Farm had a fourth insurance policy issued to Nina Ashlock and plaintiff as the insureds for a fourth automobile.[2] Each of the four State Farm policies insured a motor vehicle that was licensed in the state of Arkansas and garaged in the state of Arkansas. Each of those four policies contained underinsured motorist coverage with limits of $25,000 per person and $50,000 for each accident. The parties agree that the vehicle Mr. Simkins was driving at the time of the April 28, 2012 accident meets the definition of an underinsured motor vehicle as defined in each of those State Farm policies.

Plaintiff demanded that defendant State Farm pay her $25,000 for each of the four State Farm policies, but State Farm refused. Defendant agrees that it provides underinsured motorist coverage for plaintiff's claims, but it contends that coverage is limited by the policies' terms to the $25,000 limit of one of the four policies. Defendant has tendered that $25,000 to plaintiff. Plaintiff filed this lawsuit in the Circuit Court for Ripley County, Missouri, seeking payment of the "stacked" policies totaling $100,000. Defendant removed the case to this Court based on diversity jurisdiction.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law."

[2]The Court refers to the four policies as Policy A, B, C, and D for ease of reference.

*Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). Because "the interpretation and construction of insurance policies is a matter of law, ... such cases are particularly amenable to summary judgment." *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991).

Because this is a diversity case, the Court applies state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Plaintiff's claim is based on Arkansas contracts and the negligence of an underinsured motorist that caused an accident in Missouri. The parties agree that, based on the insurance contracts' choice of law provision and Missouri's choice of law rules, Arkansas law controls.

## III. Discussion

Arkansas law provides that courts should enforce insurance agreements as written, "so long as the policy language is clear and not violative of the state law." *Chamberlin v. State Farm Mut. Auto. Ins. Co.*, 26 S.W.3d 281, 285 (Ark. 2001). Central to this case are the four insurance contracts' identical provisions regarding "stacking" underinsured motorist coverage. That provision states as follows:

> **If Other Underinsured Motor Vehicle Coverage Applies**
>
> 1. If Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to you or any resident relative by one or more of the State Farm Companies apply to the same bodily injury, then:
>
>    a. the Underinsured MotorVehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment.

Thus, this section pertains to plaintiff — as either "you" (the named insured) or a "resident relative" — under each of the four State Farm policies. Each policy is a policy issued by a State Farm Company.

Defendant argues that each policy applies "to the same bodily injury" that plaintiff alleges resulted from the accident, and thus the contract limits payment to "the single highest applicable limit provided by any one of the policies" — namely, $25,000. In addition, defendant points to the policies' section titled "Limits":

**Limits**

1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage Bodily Injury Limits - Each Person, Each Accident."

   a. The most we will pay for all damages resulting <u>from bodily injury to any one insured injured in any one accident</u>. .. is the lesser of:

      (1) the amount of all damages resulting from that bodily injury reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person who is or may be held legally liable for that bodily injury; or

      (2) the limit shown under "Each Person".

   b. ***

2. These Underinsured Motor Vehicle Coverage limits are the most we will pay regardless of the number of:

   a. insureds;
   b. claims made;
   c. vehicles insured; or
   d. vehicles involved in the accident.

(Emphasis added.) Further, on the policy's Declarations page, it states a limit of $25,000 for "Each Person" for "Bodily Injury Limits" under "Underinsured Motor Vehicle Coverage." Thus, the insurance contract is also clear by the terms of its Limits that, regardless of the number of claims or insured vehicles, the $25,000 limit is the maximum the company will pay to one person for bodily injury.

Plaintiff seeks to avoid the anti-stacking provision, but she does not suggest that the anti-stacking provisions are contrary to public policy. Indeed, the Arkansas Supreme Court has held that they are not. *Couch v. Farmers Ins. Co., Inc.*, 289 S.W.3d 909, 915 (Ark. 2008). Rather, plaintiff proposes a novel solution to her quandary. She argues that she has multiple "bodily injuries" and therefore a separate underinsured motorist claim for each. As such, she made claims to defendant State Farm under each policy for a separate injury: For her fractured scapula under Policy A; her fractured ribs and punctured lunch under Policy B; her lacerated liver, leg, and foot under policy C; and her fractured fifth metatarsal, injury to her vertebrae, and her deep vein thrombosis under policy D. In plaintiff's claim to State Farm, she stated that because she "is not making a claim for one 'bodily injury,' the anti-stacking provision is not applicable as it does not contain" a limitation of "'to any one insured in any one accident.'" (*See* #18-1.)

In support of her theory, plaintiff insists there is ambiguity in the contract. Plaintiff points out that the policies contain numerous clauses that pertain to "limits of liability." The clauses consistently state that limits apply to "bodily injury to any one insured injured in any one accident." However, plaintiff notes, the so-called anti-stacking provision language is different: it states that the policies do not duplicate coverage for the "same bodily injury." Plaintiff insists that the phrase "to any one insured in any one accident" contained in the limits of liability section would be "surplusage" if the differences are not given effect. Plaintiff concludes that the only

way to read the provisions to avoid the "surplusage" problem is that an insured can seek coverage under separate policies for different bodily injuries. Thus, plaintiff made claims under each of the four policies for different bodily injuries, as described above.

Try as she might, plaintiff's reading of the "same bodily injury" clause is plainly wrong. When construing a contract, it is "well-settled...that the intention of the parties is to be gathered not from particular words and phrases, but from the whole context of the agreement." *Couch*, 289 S.W.3d at 913 (quoting *Health Resources of Ark., Inc. v. Flener*, 286 S.W.3d 704, 706 (2008)). Under Arkansas law, the "language in an insurance policy is to be construed in its plain, ordinary, and popular sense." *Philadelphia Indemn. Ins. Co. v. Austin*, 383 S.W.3d 815, 819 (Ark. 2011). "Different clauses of an insurance contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible." *Id.* Indeed, "giving effect to one clause to the exclusion of another on the same subject where the two are reconcilable is error." *Id.* (some punctuation removed). Particularly when read in the context of the entire policy, the parties' intention is clear. First, in the "Limits" section, above, it is abundantly clear that the maximum amount defendant will pay to any one person for injuries from one accident is $25,000. Second, the policies' "Insuring Agreement" exposes the plaintiff's flawed logic. Plaintiff argues that "defendant could have defined 'bodily injury' to include all injuries suffered by an insured in any one accident." (#21 at 2.) Plaintiff fails to appreciate that defendant's insurance policies do just that. The anti-stacking provision's plain language states that, if UIM coverage "provided by this policy and one or more other vehicle *policies...apply to the same bodily injury*," then the anti-stacking provision applies to limit payment to $25,000. (Emphasis added.) The policies' "Insuring Agreement" section explains what triggers the application of a policy:

**Insuring Agreement**

> We will pay compensatory damages for bodily injury an insured is legally entitled to recover from the...driver of an underinsured motor vehicle. The bodily injury must be:
>
> 1. sustained by an insured; and
> 2. caused by an accident that involves the operation...of an underinsured motor vehicle.

Each of the plaintiff's four policies contains the "Insuring Agreement" language, and all four clearly apply to the "bodily injury...sustained by [plaintiff, the insured]...and caused by an accident that involves the operation...of an underinsured motor vehicle." The policies do not insure particular body parts or potentially injured areas. Plaintiff cannot pick and choose to which injuries each policy applies — by the policies' terms, each applies to the same bodily injury that was caused by the accident. Her arbitrary assignment of different injuries to each of the four policies is unavailing, and the anti-stacking provisions plainly apply.

Plaintiff also attempts to create an ambiguity among the "If Other Underinsured Motor Vehicle Coverage Applies" paragraphs. The first paragraph is the paragraph quoted above. The next two paragraphs address whether and when the subject policy is "primary" (Paragraph 2) or "excess" (Paragraph 3) coverage and the corresponding action State Farm will take. Plaintiff concedes that the policies do not constitute "primary" coverage as defined in Paragraph 2, so the policies must constitute "excess" coverage as described in Paragraph 3. Plaintiff then contends without further explanation that Paragraph 3 supercedes Paragraph 1's anti-stacking provision and renders the policy ambiguous. However, it is apparent from the facts of this case that neither Paragraph 2 or 3 is applicable here. Before either Paragraph 2 or 3 is applicable, by those paragraphs' very terms, there must be available Underinsured Motor Vehicle "coverage provided by one or more sources other than the State Farm Companies." Moreover, even if Paragraph 3 were applicable here, it, again by its very terms, explains that, in situations like plaintiff's where

more than one State Farm policy has been issued, payment is subject to the anti-stacking provision of Paragraph 1. Plaintiff's ambiguity analysis is based on a simple misreading of the contract and is thus without merit.

**IV. Conclusion**

The plain language of the contract prohibits plaintiff from stacking defendant's insurance contracts. Summary judgment shall be granted to defendant, and plaintiff's motion will be denied.

Dated this 14th day of August, 2013.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE